

FILED
IN CLERK'S OFFICE

**Appeals Court Decision**

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

05-P-1625

COMMONWEALTH

vs.

MARK SCANZILLO.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

After a jury-waived trial, the defendant was convicted of two counts of rape and one count of indecent assault and battery on a person fourteen or older.[1]  Consolidated before us are his direct appeal and his appeal from the denial of his motion for a new trial, which was based on a claim of ineffective assistance of trial counsel.  For the reasons set out below, we affirm.

Background.  Before trial, the defendant filed a motion seeking medical and psychiatric records pursuant to Commonwealth v. Bishop, 416 Mass. 169 (1993), and Commonwealth v. Fuller, 423 Mass. 216 (1996) (Bishop-Fuller).[2]  The motion was accompanied by an offer of proof and was further supported by an affidavit from a forensic psychologist who had been retained as an expert by the defendant.[3]  The defendant's counsel filed the Bishop-Fuller

---

[1] The defendant was found not guilty on two other indecent assault and battery indictments.

[2] We note that the case was tried before the issuance of Commonwealth v. Dwyer, 448 Mass. 122, 139-150 (2006).

[3] In his affidavit, the expert opined that bulimia (from which the victim suffered) and its co-morbid disorders can include "depression, dysphoria, suicidal behaviors,

motion on two grounds:  first, the discovery might contain exculpatory evidence in the form of inconsistent statements by the victim; and second, there "may have been medical sequelae that would impact on [the victim's] credibility."  After conducting a hearing, a Superior Court judge allowed the motion, with a "Stage 1 Bishop hearing [to be scheduled] to determine privilege."

Rather than pursue this discovery, however, trial counsel -- after consultation with his client -- considered that "it was more important to obtain an earlier trial date, jury waived, than could have been achieved if we waited for the Bishop motion to be resolved in all of the various stages."  Trial counsel, an experienced member of the bar, called this decision "tactical." According to the defendant's wife, who was present at the time, trial counsel explained to the defendant that Bishop-Fuller "motions rarely yield useful information and require[] a lot of time because they [a]re decided in stages.  He urged us to seek a quick trial rather than to pursue this motion."  At this point, a particular judge was to be in the session in which the case was

---

dissassociative [sic] experiences, excessive emotional lability, cognitive distortions and irrational beliefs as well as anxiety disorders and personality disorders."  As such, the expert stated that discovery of the victim's medical and psychiatric records would help him determine "what impact her illness has on her cognitive abilities, including, but not limited to: recall, testimonial faculties, as well as emotional manifestations or issues such as fabrication, prevarication, false accusations, etc."

to be tried.

A three-day bench trial took place after the trial judge had conducted an extensive, detailed jury waiver colloquy.  At trial, the defense did not deny a sexual encounter between the defendant and the victim (who was the nineteen year old babysitter of the defendant's children), but claimed that it had been consensual. The defense presented the case as a contest of credibility between the victim and the defendant over whether the encounter had or had not been consensual.  The trial judge found the defendant guilty on the two rape indictments and one indictment of indecent assault and battery.

After having retained new counsel, the defendant moved for a new trial and for postconviction relief, including the discovery that had not earlier been pursued pursuant to the Bishop-Fuller motion.  The motion judge, who had been the trial judge, granted the discovery sought and, further, on subsequent motions, allowed additional discovery and permitted the defendant's new expert to examine the medical and psychiatric records obtained.  After considering the materials so obtained (a process defense counsel urged), the judge denied the motion for a new trial.

Discussion.  A new trial may be granted if it "appears that justice may not have been done."  Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001).  "[T]he granting of a new trial is a decision firmly committed to the sound discretion of

the trial judge . . . [who] has the advantage of firsthand evaluation of the witnesses and the evidence at trial." Commonwealth v. Preston, 393 Mass. 318, 324 (1984). In denying a motion for a new trial without an evidentiary hearing, "the judge's ruling will be affirmed unless 'no conscientious judge, acting intelligently, could honestly have taken the view expressed by [her].'" Commonwealth v. Candelario, 446 Mass. 847, 858 (2006), quoting from Commonwealth v. Goodreau, 442 Mass. 341, 348 (2004). Our review is limited to whether the judge abused her discretion; reversal for abuse of discretion is rare. Commonwealth v. Pring-Wilson, 448 Mass. 718, 732, 736 (2007).

The motion for a new trial was based on two types of evidence that the defendant believes his counsel should have pursued and sought to have admitted. The first was expert testimony concerning the victim's bulimia, depression, and co-morbid so-called "credibility-eroding traits." The opinion of the new expert, a clinical and forensic psychiatrist,[4] as summarized in his own words, is that the victim was "inclined to lie, particularly under stress." The second was testimony concerning the defendant's reputation in the community for honesty, trustworthiness, and kindness. The defendant argued that counsel's failure to pursue and use the expert testimony and

---

[4] This was not the same expert who submitted an affidavit in support of the original Bishop-Fuller motion.

4

the character evidence amounted to ineffective assistance of
counsel entitling him to a new trial.  The trial judge did not
err in rejecting the argument.

The defendant first contends that the judge applied an
incorrect, subjective, standard when she stated that the
proffered new evidence would not have "altered my credibility
assessments . . . or changed the verdict here."  We do not read
the judge's use of the personal pronoun as anything other than a
shorthand way of saying "fact finder's."  The defendant had
waived his right to a jury trial and, as part of that knowing
waiver, had been informed about -- and agreed to -- the judge
acting as the finder of fact in lieu of a jury.'  Thus, when the
judge referred to "my" credibility assessments, she was referring
to herself as the chosen fact finder in this case, not -- as the
defendant argues - applying an impermissible subjective standard
of review.  Moreover, the judge was not required to artificially
evaluate the motion for a new trial in a vacuum, as if she had
not been the fact finder at trial.  Where the motion judge was

_____

The evidence submitted in connection with the motion for a
new trial was not "new" in the sense of being newly discovered
posttrial, or unknown or unavailable at the time of trial.  In
fact, the expert opinion offered by the psychiatrist in
connection with the motion for a new trial was in substance
identical to that of the psychologist who submitted an affidavit
in connection with the original <u>Bishop</u>-<u>Fuller</u> motion.  There is
also no suggestion that the character evidence was not also known
about, and available, at the time of trial.

' The defendant also signed a jury-waiver form.

also the trial judge, it was within the judge's discretion to
determine the weight and import of the materials submitted in
support of the motion for a new trial.  Commonwealth v. Thomas,
399 Mass. 165, 167 (1987).  "Where the motion judge presided at
the jury-waived trial, that judge is in a particularly good
position to assess the trial record."  Ibid.

     Our view is buttressed by the next sentence in the judge's
decision, in which she states that the standard to be applied to
the defendant's motion was whether trial counsel's decision not
to pursue or seek to use the material "deprived the defendant of
(a) . . . substantial ground of defense," citing Commonwealth v.
Saferian, 366 Mass. 89, 96 (1974).  The judge's specific
reference to the Saferian standard demonstrates that she knew and
intended to apply the correct standard for assessing a claim of
ineffective assistance of counsel.  In less abbreviated form, the
standard to be applied was "whether there has been serious
incompetency, inefficiency, or inattention of counsel -- behavior
of counsel falling measurably below that which might be expected
from an ordinary fallible lawyer -- and, if that is found, then,
typically, whether it has likely deprived the defendant of an
otherwise available, substantial ground of defence."  Ibid.

     This case involves experienced trial counsel's tactical (a
term he used himself to characterize it) decision to forego the
materials sought by the Bishop-Fuller motion in favor of an

earlier trial date before a particular judge.  Unless a tactical

decision was "'manifestly unreasonable' when made," we will not

find ineffectiveness.  Commonwealth v. Ogden O., 448 Mass. 798,

806 (2007), quoting from Commonwealth v. Adams, 374 Mass. 722,

728 (1978).  See Commonwealth v. LaCava, 438 Mass. 708, 713

(2003) ("we give trial counsel's tactical decisions due

deference, and 'do not "second guess competent lawyers working

hard for defendants who turn on them when the [fact finder]

happen[s] to find their clients guilty"'"), quoting from

Commonwealth v. Street, 388 Mass. 281, 285 (1983).[7]  Part of

counsel's contemporaneous calculus was that his client would be

better served by an earlier trial before a particular judge.

This assessment was not "manifestly unreasonable":  the trial

judge did not convict on two of the indictments, sentenced the

defendant to less than the term urged by the Commonwealth, and

declined to impose life parole.

Another part of counsel's contemporaneous judgment was that

Bishop-Fuller motions rarely yield useful information.  This

assessment, too, was not "manifestly unreasonable" for several

reasons.  First, trial counsel could not be confident that the

_____

[7] This cite is particularly apt here, where during his
sentencing hearing the defendant praised the "tireless" efforts
of his counsel:  "Lastly to my attorneys, first Mr. Jones and
subsequently Mr. Reddington, I want to express my sincerest
gratitude to you for your tireless and your continuing efforts to
defend me and protect the welfare of my family.  Your efforts
will be forever appreciated."

Bishop-Fuller motion would ultimately result in his being permitted to review or receive useful or admissible information. Where, as here, the information sought was primarily medical and psychiatric records bearing on credibility, it may well not have satisfied the Bishop-Fuller standard.  See Commonwealth v. Bourgeois, 68 Mass. App. Ct. 433, 436-437 (2007) (broad claims concerning a victim's credibility as a result of medical problems were not enough to satisfy the Bishop-Fuller standard).

Second, even had the materials been produced pursuant to Bishop-Fuller, most -- if not all -- of the material was inadmissible because it was to be offered by an expert to support an opinion as to the victim's credibility.  An expert may not intrude upon the function of the jury to assess the credibility of a witness.[8]  Commonwealth v. Widrick, 392 Mass. 884, 888 (1984) (credibility of witnesses is exclusive province of jury); Commonwealth v. Ianello, 401 Mass. 197, 202 (1987) (expert opinion bearing on credibility is inadmissible); Commonwealth v. Colin C., 419 Mass. 54, 59-60 (1994) (error to admit expert testimony bearing on credibility of sexual abuse complainants); Commonwealth v. Trowbridge, 419 Mass. 750, 756 (1995) (no error in excluding expert opinion bearing on credibility of a witness); Commonwealth v. DiGiacomo, 57 Mass. App. Ct. 312, 323-324 (2003)

---

[8] "The issue of credibility . . . focuses on both the individual's ability and willingness to tell the truth." Commonwealth v. Ianello, 401 Mass. 197, 202 (1987).

(expert opinion as to credibility not admissible, even where medical records contain evidence of lying).  Nor may an expert give general opinion testimony about a medical condition or syndrome that amounts to an assessment of the credibility of a sexual assault victim.  See Commonwealth v. Calderon, 65 Mass. App. Ct. 590, 592 (2006).  Here, the proffered expert opinions that the victim, as a result of bulimia and associated illnesses, had "credibility-eroding traits" and was "inclined to lie, particularly under stress" were inadmissible.

Third, trial counsel's decision not to pursue the Bishop-Fuller material did not deprive the defendant of "an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. at 96.  Credibility, and the victim's reasons for lying, were the central themes of the trial, even without the Bishop-Fuller materials.  Defense counsel through vigorous cross-examination and argument was able to press the theory that the victim had many reasons to lie about the nature of the encounter. For example, defense counsel argued forcefully that the victim was motivated to claim rape because of the shame that would result from a confessed consensual encounter within a close-knit circle of friends (her mother and the defendant worked together and the families were friendly).  Along the same lines, he argued that the victim was motivated to lie because she did not want to admit to a consensual encounter to her boyfriend, with whom she

had been earlier in the day and to whom she turned after the incident. To support these arguments, defense counsel developed through cross-examination numerous examples of inconsistencies which he argued showed that the victim was lying about the lack of consent.

For all of these reasons, the judge did not abuse her discretion in concluding that defense counsel's decision not to pursue his Bishop-Fuller motion did not amount to ineffective assistance of counsel. See Commonwealth v. Reed, 417 Mass. 558, 562-563 (1994) (no error in denying motion for additional records bearing on credibility where issue of credibility had already been thoroughly and vigorously brought to the attention of the jury at trial).

Nor did the judge abuse her discretion in denying the motion for a new trial to the extent it was based on character evidence that was not introduced at trial. That evidence consisted of affidavits from five members of the defendant's professional and residential communities who said that they would have been willing to testify at trial to the defendant's reputation in the community for being honest, trustworthy, gentle, considerate, and kind. To the extent that any of this character evidence could have borne on any trait relevant to the crimes, the judge did not abuse her discretion in determining that it would have held little or no weight in a case where the defense was that the

10

defendant had had consensual sex with the family's babysitter while his wife and children slept upstairs.  See Commonwealth v. Thomas, 399 Mass. at 167 (it is within the judge's discretion to determine the weight and import of the materials submitted in support of the motion for new trial).

Finally, we reject the defendant's argument that other evidentiary rulings made by the judge, while not rising to the level of reversible error, had "an inherent synergistic effect" causing prejudice.

Judgments affirmed.

Order denying motion for new trial affirmed.

By the Court (Kafker, Dreben & Wolohojian, JJ.),

Clerk

Entered:  May 1, 2008.

11