```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS


MARK SCANZILLO,                )
                               )
            Petitioner,        )    CIVIL ACTION NO.
                               )    09-11220-DPW
v.                             )
                               )
JOHN J. O'BRIEN, Commissioner  )
of Probation, and HAROLD W.    )
CLARKE, Commissioner of the    )
Department of Corrections,     )
                               )
            Respondents.       )
                               )
```

MEMORANDUM AND ORDER
May 21, 2012

After unsuccessfully appealing his three Massachusetts convictions on two rape charges and one charge of indecent assault and battery on a person fourteen or older, petitioner Mark Scanzillo now seeks a federal writ of habeas corpus. As grounds for federal relief, Scanzillo contends he received ineffective assistance of counsel because of trial counsel's failure (A) to pursue medical and psychological records of the victim under the state's *Bishop-Fuller* protocol, and (B) to present evidence of petitioner's good character. Concluding that Scanzillo is not entitled to relief in this court, I will deny his petition.

I.  BACKGROUND

On November 6, 2000, Scanzillo was indicted for three counts of indecent assault and battery on a person fourteen years of age

or over, and two counts of rape, stemming from an incident on January 4, 2000, involving his childrens' nineteen year old babysitter.

The Massachusetts Appeals Court summarized the state court proceedings as follows:

> Before trial, [petitioner] filed a motion seeking medical and psychiatric records pursuant to *Commonwealth v. Bishop*, 416 Mass. 169 (1993), and *Commonwealth v. Fuller*, 423 Mass. 216 (1996) (*Bishop-Fuller*). The motion was accompanied by an offer of proof and was further supported by an affidavit from a forensic psychologist who had been retained as an expert by [petitioner].[1] [Petitioner's] counsel filed the *Bishop-Fuller* motion on two grounds: first, the discovery might contain exculpatory evidence in the form of inconsistent statements by the victim; and second, there "may have been medical sequelae that would impact on [the victim's] credibility." After conducting a hearing, a Superior Court judge allowed the motion, with a "Stage 1 *Bishop* hearing [to be scheduled] to determine privilege."
>
> Rather than pursue this discovery, however, trial counsel-after consultation with his client-considered that "it was more important to obtain an earlier trial date, jury waived, than could have been achieved if we waited for the *Bishop* motion to be resolved in all of the various stages." Trial counsel, an experienced member of the bar, called this decision "tactical." According to [petitioner's] wife, who was present at

---

[1] Footnote 3 to the Appeals Court opinion noted that "[I]n his affidavit, the expert opined that bulimia (from which the victim suffered) and its co-morbid disorders can include 'depression, dysphoria, suicidal behaviors, dissassociative [sic] experiences, excessive emotional lability, cognitive distortions and irrational beliefs as well as anxiety disorders and personality disorders.' As such, the expert stated that consequently discovery of the victim's medical and psychiatric records would help him determine 'what impact her illness has on her cognitive abilities, including, but not limited to: recall, testimonial faculties, as well as emotional manifestations or issues such as fabrication, prevarication, false accusations, etc.'"

2

>the time, trial counsel explained to [petitioner] that *Bishop-Fuller* "motions rarely yield useful information and require[ ] a lot of time because they [a]re decided in stages.  He urged us to seek a quick trial rather than to pursue this motion."  At this point, a particular judge was to be in the session in which the case was to be tried.
>
>A three-day bench trial took place after the trial judge had conducted an extensive, detailed jury waiver colloquy.  At trial, the defense did not deny a sexual encounter between [petitioner] and the victim (who was the nineteen year old babysitter of the defendant's children), but claimed that it had been consensual.  The defense presented the case as a contest of credibility between the victim and [petitioner] over whether the encounter had or had not been consensual.  The trial judge found [petitioner] guilty on the two rape indictments and one indictment of indecent assault and battery.
>
>After having retained new counsel, [petitioner] moved for a new trial and for postconviction relief, including the discovery that had not earlier been pursued pursuant to the *Bishop-Fuller* motion.  The motion judge, who had been the trial judge, granted the discovery sought and, further, on subsequent motions, allowed additional discovery and permitted [petitioner's] new expert to examine the medical and psychiatric records obtained.  After considering the materials so obtained (a process defense counsel urged), the judge denied the motion for a new trial.

*Commonwealth v. Scanzillo*, 885 N.E.2d 174 (Table), 2008 WL 1901420, at *1 (Mass. App. Ct. May 1, 2008).

Scanzillo appealed the trial judge's denial of his motion for a new trial, as well as his conviction, to the Massachusetts Appeals Court.  Scanzillo's two appeals were consolidated and denied.  *Id.*  Scanzillo applied for leave to obtain further appellate review to the Massachusetts Supreme Judicial Court, which was denied on July 23, 2008.  *Commonwealth v. Scanzillo*, 891 N.E.2d 238 (Table) (Mass. 2008).

Having exhausted his state court remedies, Scanzillo filed this timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Scanzillo's original petition contained three claims, one of which was unexhausted. After the Respondents moved to dismiss the action for failure to exhaust, Scanzillo agreed to proceed with only his two unexhausted claims. Consequently, this Memorandum and Order addresses only Scanzillo's claim that he received ineffective assistance of counsel at trial.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., a federal court may grant a state prisoner habeas relief if the state court's decision on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The Supreme Court has held that "clearly established federal law" only "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

An "unreasonable application of" clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the . . . prisoner's case." *Id.* at 407. An application of clearly established federal law is unreasonable under this standard only if it is "objectively unreasonable," not merely if it is incorrect. *Id.* at 409; *see also Grant v. Warden, Me. State Prison*, 616 F.3d 72, 76 (1st Cir. 2010) ("Under this deferential standard, the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." (citation and internal quotation marks omitted)). Finally, the First Circuit has interpreted the "unreasonable application" standard to mean that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *L'Abbe v. DiPaolo*, 311 F.3d 93, 98 (1st Cir. 2002) (citation and quotation marks omitted).

Courts look to the last reasoned state court decision in determining a petitioner's eligibility for federal habeas relief. *Malone v. Clarke*, 536 F.3d 54, 63 (1st Cir. 2008) (citation omitted). In this case, the last reasoned decision was the unpublished decision of the Massachusetts Appeals Court.

### III.  DISCUSSION

Scanzillo claims that he received ineffective assistance of counsel because his trial counsel failed to pursue medical and psychological records of the victim for exculpatory purposes and failed to present evidence of Scanzillo's good character.

When engaged to determine whether counsel's performance was effective under the Sixth Amendment, a court must ask "whether counsel has brought 'to bear such skill and knowledge as will render the trial a reliable adversarial testing process.'" *Scarpa v. DuBois*, 38 F.3d 1, 8 (1st Cir. 1994) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

The inquiry has two prongs:  performance and prejudice.  In order to succeed on his claim, Scanzillo must show both that his counsel's performance fell below an objective standard of reasonableness and, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 668.  The court must review the performance "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented," *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991), "in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law."  *Scarpa*, 38 F.3d at 15.  There is a "strong presumption" that counsel's

performance was not deficient.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

A state court's ineffective-assistance determination is due great deference "because the *Strickland* standard is a general standard, [and] a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *see also Harrington*, 131 S. Ct. at 788 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (citations omitted)).  Consequently, the inquiry on habeas review is "not whether counsel's actions were reasonable[, but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 131 S. Ct. at 788.

In an overarching contention, Scanzillo argues that the state court applied the wrong legal test and refused to follow the objective test of *Strickland* in determining his ineffective assistance claim.

The Massachusetts Appeals Court rejected Scanzillo's contention that the trial court had applied a subjective standard.  *Scanzillo*, 2008 WL 1901420, at *2.  The Appeals Court then noted that the trial judge cited *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974), for the standard to be applied to Scanzillo's claim of ineffective assistance of counsel.  *Id*. at

*3. The Appeals Court proceeded to evaluate Scanzillo's claim under the same standard. *Id.* at *3-4.

It is well settled that the *Saferian* standard is equivalent to the *Strickland* standard and is sufficient for federal habeas claims alleging ineffective assistance of counsel. *Lynch v. Ficco,* 438 F.3d 35, 48 (1st Cir. 2006) (noting that "the SJC's standard for ineffective assistance of counsel [in *Saferian*]. . . is the functional equivalent of the *Strickland* standard."). Thus, Scanzillo's claim that the state court applied the wrong standard by not citing *Strickland* is incorrect. The state court's decision in this regard was not an unreasonable application of the proper standard.

    A.    The *Bishop-Fuller* Claim

As to the claim of ineffectiveness for failure to pursue *Bishop-Fuller* evidence, trial counsel explained that his decision to forgo that evidence was a tactical one. *Scanzillo*, 2008 WL 1901420, at *3. The Massachusetts Appeals Court reviewed trial counsel's tactical decision for "manifest unreasonbleness," *id.*, a standard the First Circuit has previously held "is not contrary to the standard set forth in *Strickland*." *Castillo v. Matesanz*, 348 F.3d 1, 13 (1st Cir. 2003). Because the Appeals Court applied the appropriate legal standard to Scanzillo's claims, he can only succeed by demonstrating that the Appeals Court unreasonably applied this standard to the facts of his case.

The Massachusetts Appeals Court found that counsel's decision to go to trial to get a bench trial before a particular judge, rather than wait for the results of a *Bishop-Fuller* motion, was reasonable.  That decision by trial counsel appears to have been prudent.  The trial judge before whom Scanzillo's trial counsel wanted to try the case jury-waived did not convict Scanzillo on two of the counts of indecent assault and battery on a person fourteen years of age, sentenced him to less time than prosecutors requested, and imposed a period of three-years of probation though the convictions carried the possibility of life parole.  The Massachusetts Appeals Court reasonably concluded that this was legitimate trial strategy on counsel's part.  *See Phoenix v. Matesanz*, 233 F.3d 77, 82 & n.2 (1st Cir. 2000) (noting that under *Strickland*, trial strategy does not constitute ineffective assistance unless counsel's decision was "so patently unreasonable that no competent attorney would have made it").

Furthermore, the Massachusetts Appeals Court concluded that it was reasonable for counsel to decide to forgo the *Bishop-Fuller* motion because any evidence resulting from it would have been inadmissible under state law.  This is an independent state law ground supporting the Appeals Court's decision, which itself forecloses federal habeas review.[2]  *Pina v. Maloney*, 565 F.3d 48,

---

[2]  Likewise, because the state court decided that almost all of the *Bishop-Fuller* evidence would have been inadmissible, Scanzillo would be unable to show prejudice from his counsel's

9

52 (1st Cir. 2009); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

    B.    The Good Character Evidence Claim

As to Scanzillo's claim of ineffective assistance for failure to introduce good character evidence, the Massachusetts Appeals Court found that the trial judge did not abuse her discretion in determining that such good-character evidence would bear little weight "in a case where the defense was that the defendant had had consensual sex with the family's babysitter while his wife and children slept upstairs." *Scanzillo*, 2008 WL 1901420, at *4. Scanzillo has failed to show that the proffered testimony of his good reputation in the community would have raised a reasonable probability of a different verdict, as required under *Strickland*'s prejudice prong. *See Horton v. Allen*, 370 F.3d 75, 87 (1st Cir. 2004) (denying habeas relief and collecting cases in support, where the state court "reasonably concluded that defense counsel's failure to interview [good character] witnesses likely would not have influenced the trial outcome").

---

tactical decision to go to trial quickly.

## IV. CONCLUSION

For the reasons set forth above, I DENY Scanzillo's petition for a writ of habeas corpus.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT